(Rev. 04/2005) Complaint Under The Civil Rights Act, 42 U.S.C. § 1983

# UNITED STATES DISTRICT COURT

## Southern District of Florida

Case Number: _____

# 06-22600
## CIV-GOLD

CERTIFIED Complaint

WITH    MAGISTRATE JUDGE
                              WHITE
Supplemental Jurisdiction
State law claims included,
pursuant to 28 U.S.C. §1367

JURY DEMAND

FLOYD EAGLEWOLF
(F.K.A. FLOYD ROBERTSON)

_____

_____

_____

_____

(Enter above the full name of the plaintiff or plaintiffs in
this action.)

v.

JAMES McDONOUGH

MARTA VILLACORTA

DAVID HARRIS

GREGORY ARLINE

M. PARKER

(Enter above the full name of the defendant or defendants
in this action.)

A. McCRAY
A. DIAZ

FILED by ___ D.C.
INTAKE
OCT 23 2006
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. · FT. LAUD.

# A COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983

Instructions for Filing:

        This packet includes four copies of the complaint form and two copies of the Application to Proceed without Prepayment of Fees and Affidavit.  To start an action you must file an original and one copy of your complaint for the court and one copy for each defendant you name.  For example, if you name two defendants, you must file the original and three copies of the complaint (a total of four) with the court.  Your should also keep an additional copy of the complaint for your own records.  All copies of the complaint must be identical to the original.

        Your complaint must be legibly handwritten or typewritten.  Please do not use pencil to complete these forms. The plaintiff or plaintiffs must sign and swear to the complaint.  If you need additional space to answer a question, use an additional blank page.

        Your complaint can be brought in this court only if one or more of the named defendants is located within this district.  Further, it is necessary for you to file a separate complaint for each claim that you have unless they are all related to the same incident or issue.

        There is a filing fee of $250.00 for this complaint to be filed.  If you are unable to pay the filing fee and service costs for this action, you may petition the court to proceed in forma pauperis.

cat / div.  Dade
Case #  1:06cv 22600
Judge  ASG  Mag  PAW
Hew Up  yES
Receipt #

(Rev. 04/2005) Complaint Under The Civil Rights Act, 42 U.S.C. § 1983

Two blank Applications to Proceed without Prepayment of Fees and Affidavit for this purpose are included in this packet. Both should be completed and filed with your complaint.

In addition, if the Judge directs the U.S. Marshal to serve the summons and complaint to teach defendant, the United States Marshal will require you to pay for the costs of this service.

You will note that you are required to give facts. THIS COMPLAINT SHOULD NOT CONTAIN LEGAL ARGUMENTS OR CITATIONS.

When these forms are completed, mail the original and the copies to the Clerk's Office of the United States District Court, Southern District of Florida, 301 North Miami Avenue, Miami, Florida 33128-7788.

I.    Previous Lawsuits

A.    Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment?

Yes  (   )      No  (X)

B.    If your answer to A is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

1.    Parties to this previous lawsuit

Plaintiffs: _____

_____

Defendants: _____

_____

2.    Court (if federal court, name the district; if state court, name the county): _____

_____

3.    Case Number: _____

4.    Name of Judge to whom case was assigned: _____

_____

5.    Disposition (for example: Was the case dismissed?; Was it appealed?; Is it still pending?):

_____

6.    Approximate date of filing lawsuit: _____

7.    Approximate date of disposition: _____

(Rev. 04/2005) Complaint Under The Civil Rights Act, 42 U.S.C. § 1983

II.    Place of present confinement: _DADE C.I.-C1117L, 19000 S.W. 377 St.-suite 300, Florida City, Fla. 33034-6412_

A.    Is there a prisoner grievance procedure in this institution?

Yes  (X)    No  ( )

B.    Did you present the facts relating to your complaint in the state prisoner grievance procedure?

Yes  (X)    No  ( )

C.    If your answer is YES:

1.    What steps did you take? _Plaintiff filed necessary grievances and appeals at appropriate times and in proper form as per F.A.C. Chapter 33 rules._

2.    What was the result? _Administrative remedies exhausted for one issue. All other issues received incomplete processing, or no response at all, despite repeated filings. No response to two Complaints to Regional Director on issues._

D.    If your answer is NO, explain why not: _N/A_

III.   Parties

(In Item A below, place your name in the first blank and place your present address in the second blank.  Do the same for additional plaintiffs, if any.)

A.    Name of plaintiff: _Floyd Eaglewolf_

Address: _Dade C.I.-C1117L, 19000 S.W. 377 St.-suite 300, Florida City, Fla. 33034-6412_

In Item B below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank.  Use Item C for the names, positions, and places of employment of any additional defendants.

B.    Defendant _JAMES McDONOUGH_

is employed as _Secretary-Florida Dept. of Corrections_

at _2601 Blair Stone Rd., Tallahassee, Fla. 32399-2500_

(Rev. 04/2005) Complaint Under The Civil Rights Act, 42 U.S.C. § 1983

C.   Additional Defendants: DAVID M. HARRIS - WARDEN at Dade C.I.,
Florida Dept. of Corrections, 19000 S.W. 377 St. - Suite 300,
Florida City, Fla. 33034-6412

GREGORY ARLINE - ASST. WARDEN at Dade C.I., 19000 S.W. 377 St.
Suite 300, Florida City, Fla. 33034-6412

State here as briefly as possible the facts of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates, and places.

Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach an additional blank page if necessary.)

C.
ADDITIONAL DEFENDANTS:
MARTA VILLACORTA - REGIONAL DIRECTOR - Florida Dept. of
Corrections, 20421 Sheridan St., Ft. Lauderdale, Fla. 33332

M. PARKER - C.O. Sgt. at Dade C.I., Florida Dept. of
Corrections, 19000 S.W. 377 St. - Suite 300, Florida City, Fla. 33034-6412

A. McCRAY - C.O. Lt. at Dade C.I., Florida Dept. of Corrections,
19000 S.W. 377 St. - Suite 300, Florida City, Fla. 33034-6412

ALBA DIAZ - CHAPLAIN at Dade C.I., Florida Dept. of Corrections
19000 S.W. 377 St. - Suite 300, Florida City, Fla. 33034-6412

Page 4 of 5

(Rev. 04/2005) Complaint Under The Civil Rights Act, 42 U.S.C. § 1983

V.     Relief

State briefly exactly what you want the court to do so for you.  Make no legal arguments.  Cite no cases or statutes.

ATTACHED, F.E.

Signed this __12th__ day of __October__ , 20 __06__ .

_Floyd Eaglewolf_
Floyd Eaglewolf # 728478
Dade C.I., C1-117L
19000 SW. 377 St., suite 300
Florida City, Fla. 33034-6412
(Signature of plaintiff or plaintiffs)

I declare under penalty of perjury that the foregoing is true and correct.  Executed on __October 12, 2006__   F.E.

_Floyd Eaglewolf_
(Signature of plaintiff)

IV. Statement of CLAIMS, continued:

1.) The Plaintiff, Floyd Eaglewolf, is an indigent Native American prisoner incarcerated in the Florida Dept. of Corrections (F.D.O.C.) at Dade C.I., Florida City, Florida. The plaintiff is a member of the Seneca Nation of Indians, and is a sworn adherent to the traditional spiritual customs and laws of his people, and those of the Lakota Sioux.

2.) The Plaintiff, Floyd Eaglewolf, at all times material hereto and as set forth herein below, was in the custody of the defendant David M. Harris-Warden of Dade C.I.

3.) The Defendant, James McDonough, is secretary of the Florida Dept. of Corrections. He is ultimately responsible for the proper and lawful operations of all F.D.O.C. facilities. He is responsible for ensuring that all rules, regulations, policies, and procedures governing the operations of all state Correctional facilities comply with constitutional and statutory laws. He is responsible for ensuring and protecting the fundamental rights and privileges, of all prisoners, provided by constitutional and statutory laws. Defendant McDonough is sued in his individual and official capacities.

4.) The Defendant, David M. Harris, is Warden of Dade C.I. for the F.D.O.C.. He is responsible for the proper operation of Dade C.I.. This includes ensuring and protecting the fundamental rights and privileges of prisoners provided by constitutional and statutory laws. Defendant Harris is sued in his individual and official capacities.

Statement of **CLAIM** continued:

4.) The Defendant, Gregory Arline, is the assistant warden for programs at Dade. C.I., for the Florida Dept. of Corrections. He is responsible for the implementation and proper operation of all the inmate programs at Dade C.I., including the religious program. Defendant Arline is directly subordinate to defendant Harris. Defendant G.Arline is sued in his individual and official capacities.

5.) The Defendant, Marta Villacorta, is the regional director for the Florida Dept. of Corrections at region #4. She is responsible for the proper operation of all Florida Dept. of Corrections institutions in region #4. She is responsible for the proper training of all Dept. Correction Officer recruits in Florida Dept. of Corrections region #4. She is responsible for ensuring and protecting the basic fundamental rights and privileges provided to prisoners by statutory and Constitutional laws. Defendant Villacorta is sued in her individual and official capacities

6.) The Defendant, M. Parker, is a Corrections Officer Sergeant at Dade C.I. for the Florida Dept. of Corrections, on the midnight to 8 A.M. shift. He is responsible for security in his assigned area of duty during his shift. Defendant Parker is sued in his individual and official capacities.

Statement of CLAIM continued:

7.) The Defendant, A. McCRay, is a Corrections Officer lieutenant at Dade C.I. for the Florida Dept. of Corrections, on the midnight to 8 A.M. shift. He is responsible for security in his assigned area of duty during his shift. Defendant McRay is sued in his individual and official capacities.

8.) The Defendant, A. Diaz, is employed as the Chaplain at Dade C.I. for the Florida Dept. of Corrections Chaplaincy Services. She is responsible for supervising the religious programs, activities, and services of the various religious groups represented at Dade C.I.. Defendant Diaz is responsible for reviewing and approving inmate requests for religious articles/property mandated by the tenets of a particular faith. Defendant Diaz is sued in her individual and official capacities.

9.) The Plaintiff arrived at Dade Correctional Institution on June 23, 2006 with all authorized religious articles in my possession.

10.) Between June 23 and June 26, 2006 various Corrections Officers informed the plaintiff that he must have an 'institutional pass' in order to possess and wear his headband. The Native American headband is a religious article the plaintiff is authorized to possess and wear at all times by Department Rule #503.001 (7). These officers acknowledged the plaintiff's religious article was authorized, and did not confiscate the headband for not having a 'pass'.

**Statement of facts, continued:**

11.) The unwritten rule requiring an `institutional pass´ for authorized religious articles was promulgated by defendant M. Villacorta and is enforced only in F.D.O.C. region #4. It is only enforced upon Native American prisoners or those practicing Native American religious beliefs. No other ethnic or religious group is required to have this pass.

12.) On June 26, 2006 the plaintiff spoke with defendant Diaz in order to obtain an `institutional pass´. After providing the necessary paperwork for the religious article, defendant Diaz stated that the plaintiff would receive the pass after the warden, defendant Harris, approved it.

13.) To date, the plaintiff has received no `institutional pass´ for his religious article from either defendant Harris, or Diaz.

14.) On June 27, 2006 at 7:05 A.M. the plaintiff was confronted by defendant Corrections officer L.t. McCray in an excessively loud, aggitated, and threatening manner. Defendant McCray, using racial and ethnic slurs directed at the plaintiff, demanded a `pass´ from the plaintiff for wearing his headband, stating: "What the fuck is that on your head cracker?", "what the hell are you supposed to be?" The plaintiff responded that he was Native American and presented his I.D. Card to defendant McCray for verification.

15.) Same incident, para. #14 above, after the plaintiff notified

**Statement of facts, continued:**

defendant McCray that he did not have a pass, but was waiting to get one, defendant McCray again directed ethnic and racial slurs at the plaintiff ordering him to remove his headband as being "unauthorized", stating: "Get that off your head now inmate"... "Stupid Cracker or whatever you are." "Indian my ass." The plaintiff then stated to defendant McRay that the headband was authorized by F.D.O.C. rule, and the Chaplain. Defendant McCray continued his tirade stating: "I told you that thing is unauthorized", "I don't walk around showing my religion and you aren't either", "This is my reservation and I'm the chief, got it."

16.) On June 27, 2006 at about 3:00 P.M. the defendant Chaplain Diaz stops to speak with the plaintiff, and asks the plaintiff why he is not wearing his headband. The plaintiff relates the incident with McRay from the morning. Defendant Diaz states that the headband "is authorized." At that time defendant Diaz walked over to the head of security, Colonel Churchwell, and verifies the headband being authorized, as the plaintiff looks on.

17.) On June 28, 2006 at or about 6:20 A.M. defendant McCray again, in a very loud, aggitated and threatening manner, confronts the plaintiff over his headband. Defendant McCray, directing racial and ethnic slurs at the plaintiff, demands to see the "pass" authorizing the plaintiff to wear his headband, stating: "Come here, cracker", "what the hell did I tell you about wearing that voodoo crap?", "Where's your pass for that thing, Tonto?"

**Statement of facts, continued:**

18.) Same incident, para.#17 above, The plaintiff attempted to explain he had not been given a pass yet, but the Chaplain and Colonel authorized it. However, defendant McCray continued shouting racial and ethnic slurs at the plaintiff, ordering him to remove his religious article as being unauthorized, stating: "Get that off your fucking head now, ···stupid Cracker", "I've told your dumb ass that shit isn't authorized." "If I see that piece of shit on your head again···", "···If one of my officers tell me they've seen your injun ass wearing it, I'm taking it!" "I might lock your injun ass up for disobeying an order". The plaintiff briefly stated: "Sir, this is an authorized religious article, ask the Warden, or Chaplain" Defendant McCray then stated: "Fuck your voodoo religion, Cracker!", "I see it again···it's mine".

19.) On June 29, 2006 the plaintiff initiated attempts at exhausting his administrative remedies by filing an informal grievance to the warden, defendant Harris.

20.) On July 13, 2006 the plaintiff continued his attempts at exhausting his administrative remedies by filing a formal grievance to the warden, defendant Harris, after receiving NO response to his informal.

21.) On August 3, 2006 at 4:17 P.M. the plaintiff received the response to his informal grievance, para.#19 above, which was backdated for July 14, 2006. Defendant Arline's response, states: "I have advised all the shift Captains and lieutenants that your headband WILL NOT BE CONFISCATED."

**Statement of facts, continued:**

22.) On August 4, 2006 at 6:15 A.M. the plaintiff is confronted by defendant McCray, who again directs demeaning racial and ethnic slurs at the plaintiff, demanding to see the plaintiff's 'paperwork' authorizing him to wear his religious article. The plaintiff produced a copy of his informal grievance with Warden Arline's response, para. #21 above. Defendant McCray states: "This doesn't authorize that damned thing on your head."; "This is a grievance, not a pass you stupid cracker."; "I don't see this."; "I don't give a damn what this says."; "That damned headband is unauthorized Tonto, and it's coming off, now." At this time defendant McCray moved toward the plaintiff in a manner strongly suggesting he intended to put his hands on the plaintiff. Fearing he was about to be battered, the plaintiff stepped back from the defendant about a foot. Defendant McCray then ordered the plaintiff to remove his headband and give it to him. The plaintiff complied. Defendant McCray radioed for assistance from defendant Sgt. M. Parker, and directed Sgt. Parker to confiscate the plaintiff's religious article and give him a property receipt for it, stating to defendant Parker: "This is the third time I've told this stupid injun that headband isn't authorized, and not to wear it."; "Fuckin Cracker picked the right one to try."; "Thinks he's going to come in here with his damned voodoo religion crap and start his own reservation."; "I'm not having that shit here."

23.) Same incident, para. #22 above, As defendant Parker was escorting the plaintiff back to 'C' dorm, the plaintiff attempted to show

Statement of Facts, continued:

defendant Parker his copy of the informal grievance, and asked him if he would call the shift captain so this problem could be properly resolved. Defendant Sgt. Parker stated: "I don't care what that says (the grievance), and I'm not bothering the captain over this.", "It's your problem, you deal with it.", "I'm not going to go against Lt. McCray for you."

24.) On August 7, 2006 the plaintiff filed a second informal grievance over defendant A. McCray's actions in confiscating my authorized religious property, and over defendant Sgt. Parker's inaction for failing to correct a problem that he knew, or should have known, was a constitutional violation, to warden, defendant D. Harris.

25.) On August 9, 2006 the plaintiff mailed a formal complaint to defendant M. Villacorta, as director of region #4, at: P.O. Box 297410, Pembroke Pines, Fla. 33029-7410. The plaintiff was NOT allowed to mail the complaint through the legal mail service, so the routine mail service was used, with first class postage.

26.) On August 18, 2006 the plaintiff continued attempts at exhausting his administrative remedies by filing a formal grievance to defendant Harris after receiving no response to his informal grievance, para. #24 above.

DC 225 (Rev. 1/97)

**Statement of facts, continued:**

27.) On about August 21, 2006 the plaintiff requested authorization, from defendant Diaz, to obtain a short (27 inches) piece of leather cord to replace the strap that had rotted on his medicine bag. The medicine bag cannot be properly used without this strap.

28.) Same incident, para. #27 above, defendant Diaz denied the request for a new leather cord, stating the plaintiff could "carry the medicine bag in your pocket." The plaintiff informed defendant Diaz that the medicine bag is created, and intended, to be worn around the neck. The plaintiff presented a copy of written authorization, from the Chaplain and warden of his previous institution, allowing receipt of a new leather cord for the same reason. Defendant Diaz then directed the plaintiff to submit a written request for a new leather cord. Defendant Diaz kept the plaintiff's copy of the authorization to receive a leather cord from his previous institution.

29.) On or about August 22, 2006 the plaintiff submitted three separate requests to defendant Diaz for a place outside the Chapel to make his prayers, and two religious articles necessary for the proper observation of his spiritual beliefs.

30.) To date the plaintiff has received no response from defendant Diaz to any request he has submitted.

31.) The plaintiff requested to receive a 'beaded' headband to replace the plain leather one that was confiscated. The beads are placed onto the

STATEMENT OF CLAIM :

headband to create the various spiritual symbols used to invoke the guidance and protection of particular spirits. When worn the headband acts as a continuous prayer to the spirit(s).

32.) The plaintiff requested to receive two small ($\frac{1}{4}$ to $\frac{3}{8}$ in. dia.) earring as articles necessary to the traditional practice of his faith. They are used to signify the wearer has sworn, or vowed, to follow the traditional spiritual laws and customs of their tribe or nation. This oath is similar in purpose to a priest's vows. It provides a closer, stronger bond with the Creator. Afterwords, the earrings are not to be removed.

33.) On September 4, 2006 the plaintiff filed his informal grievances to defendant Arline after receiving no response from defendant A. Diaz regarding the plaintiff's requests for: religious articles, a place and time for prayers, a proper beaded headband, and the leather cord (strap) to repair his medicine bag for proper use.

34.) On September 7, 2006 the plaintiff filed his administrative appeal to Tallahassee after receiving no response, to his formal grievance, from defendant Harris .

-14-

STATEMENT OF CLAIM:

35.) The Native American headband, earrings, medicine bag, and prayer feather are religious articles fundamental or central to the plaintiff's religion.

36.) The "Guidelines For Native American Religious Observance" (F.D.O.C. 2004) Procedure number 503.001 (8)(a) specifically authorizes the plaintiff to possess and wear his religious article "at all times".

37.) The plaintiff has no alternative means to achieve the same spiritual guidance and protection provided by the Medicine bag, earrings, prayer feather, and headband.

38.) On September 18, 2006 the plaintiff filed his formal grievance to defendant Harris after receiving no responses to his informal grievances filed on September 4, 2006.

39.) On September 22, 2006 at 10:06 P.m. the plaintiff finally received the responses to his two informal grievances, para.# 24 supra, and para.# 26 supra. Both grievances were intentionally responded to far past the time period established in the guideline procedures, F.A.C. chpt. 33-103.011 rules, in order to prevent the plaintiff from exhausting his administrative remedies.

STATEMENT OF CLAIM:

40.) The plaintiff has received no response from defendant M. Villacorta, to his complaint mailed on August 9, 2006.

41.) It has been the plaintiff's personal observation and experience, during his incarceration at Dade C.I., that requests and grievances filed by prisoners are rarely responded to. If a response is received it is not until a month or more after the deadline time period to file a timely response, or appeal.

42.) After the plaintiff's first appeal to the 'Bureau of Inmate Grievance Appeals', the plaintiff has been prevented from filing any further appeals due to the defendant's failure to respond, or to timely respond, to the plaintiff's requests and grievances. The 'Bureau of Inmate Grievance Appeals' will not accept, but return, any appeals not accompanied by documents showing exhaustion of administrative remedies at the institutional level.

43.) The plaintiff has made good faith attempts at exhausting his administrative remedies for all issues in this case. For reasons unknown to the plaintiff, and beyond his control, all requests, grievances, appeals, and written complaints have gone unanswered, except for the three accompanying this complaint.

STATEMENT OF CLAIM:

44.) If not for the accompanying grievances, <u>LOG</u> #'s W6-6-1935 / W6-8-2009 (also numbered 06-8-960) / and 0608-463-162, there would be no record of the plaintiff having filed anything with the defendants in this case.

45.) The plaintiff has experienced and observed that outgoing mail that is critical of the staff or institution rarely, if ever, receives responses.

46.) The plaintiff's religion and culture are not new to the defendants or the F.D.O.C. • Native American religious practices were officially recognized by the Dept. in 1999. However, virtually every institution claims ignorance of the Native American religious guidelines, and every institution the plaintiff has been to has created unwritten rules or policies designed to burden and/or prevent Native Americans from practicing their religion.

47.) The dominant mainstream religions in the F.D.O.C. are provided everything to practice their religions, and the plaintiff has seen only the Muslim inmates receive occassional problems from the prison staff.

48.) After the plaintiff's arrival at Dade C.I., the defendants, McCray,

STATEMENT OF CLAIM:

48.) Parker, Diaz, Arline, and Harris intentionally worked to burden and deny the plaintiff all opportunity to practice his religion solely due to his race and religious practices.

49.) The actions, or inactions, of the named defendants have intentionally burdened and denied the plaintiff's religious liberty in egregious and unnecessary ways due to indifference, ignorance, discrimination, or claimed lack of resources.

50.) The defendants Harris, Arline, McCray, and Parker, and approximately 85-90% of the employed Corrections officers at Dade C.I., are of the Negro racial group and virtually all espouse some version of the Christian faith system.

51.) Defendant McCray's racially motivated actions were given tacit approval from defendants Harris and Arline by their intentional mishandling of the plaintiff's grievances and requests.

52.) Defendant Arline covers up for defendant McCray by claiming, in his response to grievance #W6-8-2009, that defendant McCray was directing the plaintiff to follow policy and procedure for the Native American headband, when NO such rule exists, but in region #4

- 18 -

53.) Native Americans do not have an organized religion as do the dominant mainstream religious groups. Contrary to the F.D.O.C.'s beliefs and assertions, there are very few, if any, Native Volunteers for any organized Native religious activities.

54.) From 1998 to the present, the plaintiff has known of, and met with, only one Native volunteer who visited different institutions for organized religious activities. He was restricted to the North Florida area, F.D.O.C. region #1, because of the financial burden.

55.) Native Americans must pay for their required religious articles. Those without funds must do without.

56.) Articles used in daily religious observances, Ie: small hand drums, tapes of ceremonial music, or pipes, must be either brought in by a Native "Volunteer", or purchased by the inmate and then "DONATED" to the F.D.O.C.. They can not be taken by the Native inmate to his next institution if, when, transferred. Because of this regulation Native American inmates are forced to do without these articles due to the financial burden replacing the same articles over and over places on the family. No one can, or will, obtain them.

57.) The plaintiff was incarcerated in the F.D.O.C. from about Aug. 10, 1998 to Dec. 23, 2002, when his criminal conviction was overturned by the Fla. Supreme Court.

58.) Between Dec. 23, 2002 and July 27, 2005 the plaintiff was in the custody of Dade Co. Dept. of Corrections as a pre-trial detainee.

59) In 2003 and 2004 the plaintiff petitioned the Eleventh Circuit Court, Miami, Fla. for a name change, on religious and cultural grounds.

60.) On Aug. 17, 2004 the 11ᵗʰ Cir. Ct., Honorable Judge Shapiro, granted the plaintiff's petition for religious name change.

61.) During the time the plaintiff petitioned for, and was granted, his religious name change, he was neither a convicted felon, nor, in the custody of the F.D.O.C.

62.) The plaintiff received certified copies of the order granting his religious name change, about Sept. 15, 2004, and then began waiting for the name change to appear on the Court records and documents.

63.) About June 2005 the plaintiff's criminal case suddenly was moving forward with plea negotiations. The plaintiff realized that the Circuit Court had not, yet, changed, or added, his new name on the Court records.

64.) The plaintiff, in July 2005, petitioned the 11ᵗʰ Cir. Ct., Honorable Judge D. Trawick, by motion, to change his name on the information or indictment page of the Committment documents to reflect the plaintiff's statutory name change. It was specifically noted in this motion that if this was not done, the plaintiff would not be able to properly practice his religion when placed in the F.D.O.C.

65.) The plaintiff received no response to his motion, para. # 64 above, and on July 27, 2005 was committed to the F.D.O.C. At this point the plaintiff assumed that his name had been changed on the Committmen documents and his new name would appear on the F.D.O.C. records.

66.) Upon arriving at the F.D.O.C. reception center, the plaintiff noted his 'old' name was being used as his 'Committment' name, and not the new one.

67.) The plaintiff presented prison officials with a copy of the Court's order for his name change. Prison officials refused to use the plaintiff's new name stating that he "could take care of it at his permanent institution."

68.) The plaintiff's permanent institution, in response to grievances, stated that it was F.D.O.C. rule that prevented me from using my religious name as needed. This same institution, Okeechobee C.I., even refused to allow the plaintiff to use their so-called 'dual name' policy. Okeechobee C.I. is also in region #4.

69.) The Circuit court failed to notify the F.D.O.C., as an interested state agency, of my statutory name change prior to my commitment as directed by statutory law.

70.) The plaintiff's religious name is a central tenet of his faith and culture which requires its use exclusively.

71.) Names have power over a person and speaking their real name while they are alive is disrespectful and potentially harmful. A person wishing to do another harm may call bad spirits to them if they know their real name.

72.) Using a person's real name after they have died will call the departed's spirit back from their journey to the spirit world. This will cause the spirit to become angry and malevolent.

73.) At birth a child is given their real name at a naming ceremony about two weeks after they are born, because the infant has no spirit until then, and is not considered a person.

74.) About two weeks after the naming ceremony the child is then given their second, or spirit name. No one but the family and those performing the Ceremony knows the childs real name.

75.) Names will change about three times in the person's life. At birth, at adolescence, and adulthood. Often the same spirit name is kept from adolescence to adulthood.

76.) False, or Spirit names can come from any any source, ie.: physical or personality traits, or, as with the plaintiff, from religious influence or Commitments.

77.) The plaintiff's spirit name was given after he had taken his commitment vows during a ceremony in 1980. It bonds the plaintiff to his animal spirit guides, The Eagle and the Wolf, and honors them for the guidance and protection they provide.

78.) At this same ceremony, para. # 77 above, after taking his vows to honor and follow the traditional spiritual laws and customs of the Seneca nation, both the plaintiff's ears were pierced by two attending elders. Two small gold hoops were placed into the holes, and remained there until November 1996 when the plaintiff was placed into jail.

79.) By not using his given spirit name, the plaintiff is offending and dishonoring his spirit guides, who will become angered and abandon the plaintiff, or even cause harm.

80.) All inmates are identified by their name, including aliases, and D.O.C. number. This information is available to every institution through a central

STATEMENT OF CLAIM:

data bank.

81.) Every institution regularly and routinely accesses the central data bank to deliver mail where the name is misspelled or the D.O.C. number is missing or wrong, and when the inmate has been moved to another dorm or institution.

82.) Simply switching one name for another will be no more than the minor inconvenience of making the data entry to the central data bank, and faxing an appropriate memo to the plaintiff's current institution. In this day and age the F.D.O.C. will _not_ have to "change all their records" laboring over hand written documents, but merely make a minor change or addendum to the Central data repository.

83.) The actions or inactions of the defendants in this case have denied the plaintiff all opportunity and/or means to practice his sincerely held religious beliefs.

84.) The actions of the defendants have placed unnecessary and unreasonable burdens upon Native Americans religious practice,

STATEMENT OF CLAIM :

that are not applied in the same manner to any other religious group in the F.D.O.C., simply because Native American religious practices are unusual and not mainstream.

85.) The Florida Dept. of Corrections receives funding from the U.S. government for various programs within the department. It is the plaintiff's understanding that the Chaplaincy Services dept. is one of several programs that receives such funding either directly or indirectly.

86.) Funding allotted to the Chaplaincy Services program(s) is supposed to be divided evenly among the represented faith groups.

87.) Those inmates of the Christian, Jewish, or Islamic faith groups enjoy an air conditioned building, built on State owned/leased land with state and/or Federal funds, for religious study and services with all, or most, of their religious needs being met. However, Native Americans are denied even a patch of grass outside to stand on to make our prayers, and must suffer the humiliation and indignity of ignorant, racist Corrections officials who regularly mishandle, confiscate,

STATEMENT OF CLAIM:

and even destroy Native American religious property.

### FIRST CAUSE OF ACTION

88.) The actions of the defendant, A. McCray, as described in the foregoing statement of claims, paragraphs numbered 14 through 24, intentionally and unnecessarily denied the plaintiff all opportunity and means to practice a fundamental part of his religion in violation of the First Amendment U.S. Constitution; 42 U.S.C. § 2000-cc1(a)(1)-(2); Article I, sec. 3 Florida Constitution; and statutory law § 761.03 (i)(a)(b) F.S.

89.) The plaintiff's Constitutionally and statutorally protected right to freedom of religion was violated when the defendant, A. McCray, intentionally ignored established F.D.O.C. rules for Native American religious practices, and willfully ignored the written order of his superior officer for the purpose of confiscating the plaintiff's headband, an authorized religious article.

### SECOND CAUSE OF ACTION

90.) The actions of the defendant, A. McCray, as described in the foregoing statement of claims, paragraphs numbered 14 through 24,

STATEMENT OF CLAIM :

willfully violated the plaintiff's protected right of freedom of religion,
and while doing so verbally demonstrated his hatred, contempt, and
animosity towards the plaintiff's race and religious beliefs in
violation of the `Florida Civil Rights Act `of 1992, §§ 760.11 (5);
775.085 (1)(a) F.S.

91.) The plaintiff's statutorally protected right to be free from racial
and religious persecution was violated when the defendant,
McCray, intentionally confronted the plaintiff on multiple occassions
over the plaintiff's authorized religious property, and during each
confrontation, in front of large gatherings of mostly negro inmates,
loudly made derogatory, humiliating, and demeaning slurs directed
at the plaintiff's race and religion.

## THIRD CAUSE OF ACTION

92.) The actions of the defendant, M. Parker, as described in the
foregoing statement of claims, paragraphs numbered 23 and 48,
directly or indirectly caused or contributed to the violation of
the plaintiff's right of freedom of religion in violation of the
First Amendment, U.S. Constitution; 42 U.S.C. §2000-cc 1(a)(i)-(2);
Article I, secn. 3, Florida Constitution; and Statutory law §
761.03 (1)(a)(b) F.S.

STATEMENT OF CLAIM:

93) The plaintiff's constitutionally and statutorally protected right of freedom of religion was violated when the defendant, M. Parker, : (a) followed the directive of defendant Lt. McCray, to confiscate the plaintiff's authorized religious property, when defendant Parker knew, or should have known, that doing so violated Dept. rules and constitutional law. (b) refused to contact the shift Captain at plaintiff's request when he knew, or should have known, that doing so would have prevented the violations of Dept. rules and constitutional laws to the plaintiff's detriment. (c) acquiesced to defendant McCray's directive due to the racial difference of the plaintiff.

## FOURTH CAUSE OF ACTION

94) The actions of the defendant, D. Harris, as described in the foregoing statement of claims, paragraphs numbered: 19-20-24-34-38-43-48 and 51, intentionally caused or contributed to the denial of all opportunity for the plaintiff to practice his religious beliefs in violation of the First Amendment, U.S. Constitution; 42 U.S.C. §2000-cc1(a)(1)-(2); Article I, secn.3 Florida Constitution; and statutory law §761.03(1)(a)(b) F.S.

STATEMENT OF CLAIM:

95.) The plaintiff's Constitutionally and statutorily protected right to freedom of religion was violated when the defendant, D. Harris, (a) failed in his duty, as warden of Dade C.I., to respond to or properly address any of the plaintiff's grievances despite knowing that his failure to do so would result in violations of the plaintiff's rights and privileges, as well as prevent the plaintiff from exhausting his administrative remedies thereby denying the plaintiff all opportunity for relief. (b) acquiesced to defendant McCray's actions to avoid personal conflict with defendant McCray due to the racial and religious differences between the plaintiff and defendants.


## FIFTH CAUSE OF ACTION

96.) The actions or inactions of the defendant, D. Harris, as described in the foregoing statement of Claims, paragraphs numbered -19-20-24- 34-38-43-48-51, willfully violated the plaintiff's protected right to freedom of religion. Said actions or inactions being motivated not by any legitimate Dept. rule or regulation but by the defendant's prejudice, towards the plaintiff's race and religious beliefs, demonstrated the defendant's hatred, contempt, animosity or indifference of the plaintiff's race and religion in violation of the `Florida Civil

STATEMENT OF CLAIM:

Rights Act of 1992, §§ 760.11(5); and 775.085(1)(a) F.S.

97.) The plaintiff's statutorily protected right to be free from racial and religious persecution was violated when the defendant, D. Harris, : (a) refused or failed to properly address any of the plaintiff's grievances regarding the violation of the plaintiff's religious rights and privileges. (b) refused or failed to take any action to correct defendant McCray's improper actions, despite being made aware of McCray's actions through plaintiff's grievances. (c) acquiesced to defendant McCray's actions to avoid personal conflict with defendant McCray due to the racial and religious differences between the plaintiff and defendants.

## SIXTH CAUSE OF ACTION

98.) The actions of the defendant, G. Arline, as described in the foregoing statement of claims, paragraphs numbered - 21-33-43- 48-51-52, intentionally and unnecessarily denied and/or directly contributed to denying the plaintiff **all** opportunity to practice his religious beliefs in violation of the First Amendment, U.S. Constitution; 42 U.S.C. § 2000-cc1(a)(1)-(2); Article I, secn. 3 Florida Constitution; and Statutory law § 761.03 (1)(a)(b) F.S.

STATEMENT OF CLAIM:

99.) The plaintiff's constitutionally and statutorily protected right to freedom of religion was violated when the defendant, G. Arline, (a) failed in his duty as assistant warden of Dade C.I. by not taking disciplinary or other action to curb defendant McCray's actions, despite his knowledge that defendant McCray's actions would violate defendant's religious rights. (b) intentionally failed to respond to plaintiff's grievances in a timely manner in order to prevent the plaintiff from exhausting his administrative remedies. (c) used an unwritten, non-existant rule, regulation, policy, or procedure to claim that the plaintiff was acting improperly and not defendant McCray. (d) acquiesced to defendant McCray's actions to avoid a personal conflict with McCray due to the racial and religious differences between the plaintiff and defendants.

## SEVENTH CAUSE OF ACTION

100.) The actions or inactions of the defendant, G. Arline, as described in the foregoing statement of Claims, paragraphs numbered-21-33-43-48-51-52, willfully violated the plaintiff's protected right of freedom of religion. Said actions or inactions being motivated not by any legitimate Dept. rule or policy, but by the defendant's prejudice and desire to protect same race co-worker, demonstrated the defendant's hatred,

- 30 -

STATEMENT OF CLAIM:

Contempt, animosity, or indifference towards the plaintiff's race and religious beliefs in violation of the 'Florida Civil Rights Act of 1992, §§ 760.11 (5); and 775.085 (1)(a) F.S.

106.) The plaintiff statutorily protected right to be free from racial and religious persecution was violated when the defendant, G. Arline, (a) failed to take any action to curb defendant McCray's actions because of the racial difference between the plaintiff and the defendants, and fully knowing that his actions or inactions would result in the violation of the plaintiff's right to religious freedom. (b) intentionally failed to respond to plaintiff's grievances and failed to respond to the plaintiff's grievances in a timely manner in order to prevent the plaintiff from exhausting his administrative remedies to protect his same race co-worker, defendant McCray. (c) acquiesced to defendant McCray's actions to avoid a personal conflict with defendant McCray due to the racial and religious differences between the plaintiff and defendants. (d) used an unwritten, non-existent rule, regulation, policy, or procedure to claim that defendant McCray's actions were legitimate and appropriate, despite defendant Arline knowing the Dept. rules and state, Federal laws hold otherwise.

- 31 -

STATEMENT OF CLAIM:

## EIGHTH CAUSE OF ACTION

102.) The actions or inactions of the defendant, A. Diaz, as described in the foregoing statement of claims, paragraphs numbered - 12 - 13 - 16 - 27 through 33 - 48 - 49, intentionally and unnecessarily denied and/or contributed to the denial of all/any opportunity to practice his sincerely held religious and cultural beliefs, in violation of the First Amendment, U.S. Constitution; 42 U.S.C. § 2000-cc 1(a)(i)-(2); Article I, secn. 3 Florida Constitution; and statutory law § 761.03 (1)(a)(b) F.S.

103.) The plaintiff's constitutionally and statutorily protected right to freedom of religion was violated when the defendant, A. Diaz, (a) failed to provide the plaintiff with an `institutional pass', as per invalid institutional/regional rule, authorizing the plaintiff to possess and use his headband, a religious articles central to the plaintiff's faith. (b) denied or failed to provide the plaintiff and all Native Americans a time and place outdoors to make personal prayers in accordance with the tenets of his faith, as is done for every other faith group in F.D.O.C. (c) denied the plaintiff authorization for the possession and use of a beaded headband, and a pair of small earrings, which are religious and culturally mandated articles needed for daily, personal religious observances.

STATEMENT OF CLAIM:

(d) denied the plaintiff the ability to properly repair his medicine bag, an authorized religious article currently in the plaintiff's possession, thereby preventing the plaintiff from properly using his religious article in the manner dictated by the tenets of his religion.

<u>NINTH CAUSE OF ACTION</u>

104.) The actions or inactions of the defendant, M. Villacorta, as described in the foregoing statement of claims, paragraphs numbered - 11-25-40-49-90 and 91, intentionally and unnecessarily caused the plaintiff's religious practice to be burdened and/or denied in violation of the first Amendment, U.S. Constitution; 42 U.S.C. §2000-cc 1(a)(1)-(2); Article I, secn. 3 Florida Constitution; and statutory law § 761.03(1)(a)(b) F.S.

105.) The plaintiff's constitutionally and statutorily protected right to freedom of religion was violated when the defendant, M. Villacorta, (a) intentionally promulgated, and caused to be enforced, an invalid rule or regulation in F.D.O.C. region #4, that improperly, and unnecessarily, hinders and/or denies, only those of the Native American race and religious group, from properly practicing their religious beliefs by requiring Native Americans to have an `institutional pass´ authorizing the possession and use of required religious

STATEMENT OF CLAIM:

articles already `authorized` by legitimate, valid Dept. rules and procedures. The defendant knew or should have known the enforcement of the unwritten, invalid rule or regulation would violate the plaintiff's right of freedom of religion, and further result in the Native American religion being treated more onerously than any other racial or religious group in F.D.O.C.. (b) failed to take actions to curb or otherwise correct the improper actions or inactions of defendants Harris, Arline, McCray, Parker, and Diaz, after being notified in writting, by the plaintiff, of their improper actions or inactions and the adverse effect those actions or inactions were having upon the plaintiff's religious practice, and knowing said failure to act would likely result in the violation of the plaintiff's religious rights.

## TENTH CAUSE OF ACTION

106.) The actions of the defendant, J. McDonough, as described in the foregoing statement of claims, paragraphs numbered - 57 - 94, unnecessarily denied the plaintiff the ability to practice a central, or fundamental part of his religion in violation of the First Amendment, U.S. Constitution; 42 U.S.C. § 2000 - cc 1 (a)(i)-(2); Article I, secn. 3 Florida Constitution; and statutory law § 761.03(i)(a)(b) F.S.

- 34 -

STATEMENT OF CLAIM:

107) The plaintiff's Constitutionally and statutorily protect right of freedom of religion was violated when the defendant, J. Mcdonough, (a) created and enforced a rule or regulation, or, continued the enforcement of a previously created Dept. rule or regulation that prevents the plaintiff from using his legally changed (statutory) religious name as his 'committed' name while in the F.D.O.C., despite the statutory name change having been completed and documented a year _prior_ to the plaintiff's entry into the F.D.O.C.. This rule or regulation prevents the plaintiff from practicing a fundamental tenet of his religious beliefs. (b) created and enforced a rule or regulation, or, continued the enforcement of a previously created Dept. rule or regulation that prevents the plaintiff from using his statutorily changed name, as a state prisoner, to access important inmate services, I.e: Notary services, routine/legal mail, inmate banking, etc., thereby forcing the plaintiff to violate his religious beliefs to obtain these services. (c) hindered or prevented the plaintiff's spiritual protection, growth, and development by preventing the plaintiff from using his legally changed name as mandated by the plaintiff's religion and culture.

## V - RELIEF :

WHEREFORE,

The plaintiff respectfully requests this honorable Court to grant him the following relief:

### DECLARATORY RELIEF

A.) Issue a declaratory Judgment that the defendant, A. McCray, violated the First Amendment, U.S. Constitution; 42 U.S.C. § 2000-cc 1(a)(1)(2); Article I, secn. 3 Florida Constitution; and statutory law § 761.03 (1)(a)(b) F.S., when he willfully ignored clearly established F.D.O.C. rules and procedures for Native American religious practices, and the written order or directive of his superior officer in order to confiscate the plaintiff's authorized religious article to prevent the plaintiff from practicing his religion.

B.) Issue a declaratory Judgment that the defendant, A. McCray, violated statutory laws §§ 760.11(5); 775.085(1)(a) F.S., when he willfully violated the plaintiff's civil rights, and while doing so verbally demonstrated, with racial and religious slurs, his hatred, contempt, and animosity for the plaintiff's race and religion.

V. RELIEF CONTINUED:

C) Issue a declaratory judgment that the defendant, M. Parker, knowingly violated, or aided in, or contributed to violating the First Amendment, U.S. Constitution; 42 U.S.C. §2000-cc1(a)(1)-(2); Article I, secn.3 Florida Constitution; and statutory law §761.03(1)(a)(b) F.S., when he: willfully ignored clearly established F.D.O.C. rules and procedures for Native American religious practices, and the written order, or directive, of his superior officer to follow defendant McCray's unlawful directive to confiscate the plaintiff's authorized religious article, when he knew or should have known his actions would violate, or, contribute to the violation of the plaintiff's right of religious freedom. (b) refused to take any action that would prevent, or correct defendant McCray's actions, and prevent the plaintiff's civil rights from being violated. (c) acquiesced to defendant McCray's unlawful directive in order to avoid a personal conflict with defendant McCray due to the racial and religious differences between the plaintiff and the defendants.


D) Issue a declaratory judgment that the defendant, M. Parker, violated Florida statutory laws §§760.11(5); 775.085(1)(a), when he willfully refused to take any action which would have prevented defendant McCray from violating the plaintiff's rights protected

-37-

V RELIEF CONTINUED:

by F.D.O.C. rules, Constitutional and Statutor laws, due to the racial and religious differences between the plaintiff and the defendants.

E.) Issue a declaratory judgment that the defendant, D. Harris, violated the First Amendment, U.S. Constitution; 42 U.S.C. § 2000-cc 1(a)(1)-(2); Article I, secn. 3 Florida Constitution; and statutory law § 761.03 (1)(a)(b) F.S., when he (a) failed to follow established F.D.O.C. grievance procedures by failing to respond, or, failing to timely respond to the plaintiff's requests, grievances, and appeals when the defendant knew, or should have known, his failure to do so would result in violation of the plaintiff's religious rights, and prevent the exhaustion of his administrative remedies, denying the plaintiff all opportunity for relief. (b) failed to follow established F.D.O.C. grievance procedures to prevent the plaintiff from exhausting his administrative remedies, thereby covering for defendant McCray's unlawful actions.

F.) Issue a declaratory judgment that the defendant, D. Harris, violated Florida Statutory laws §§ 760.11(5); 775.085(1)(a), when he knowingly and willfully failed to follow established F.D.O.C.

V  RELIEF CONTINUED:

grievance procedures, thereby contributing to the violation of the plaintiff's religious right, and preventing the plaintiff from exhausting his administrative remedies because of the racial and religious differences between the plaintiff and the defendants.

G) Issue a declaratory judgment that the defendant, G. Arline, violated the First Amendment, U.S. Constitution; 42 U.S.C. §2000-cc 1(a)(1)-(2); Article I, secn. 3 Florida Constitution; and statutory law § 761.03 (1)(a)(b) F.S., when he (a) intentionally failed to follow established F.D.O.C. grievance procedures by not responding, or not timely responding to the plaintiff's requests, grievances, or appeals when the defendant knew, or should have known that his failure to do so would result in violations of the plaintiff's religious rights, and prevent the exhaustion of the plaintiff's administrative remedies, and deny the plaintiff all opportunity for relief. (b) intentionally failed to follow established F.D.O.C. grievance procedures for the purpose of preventing the plaintiff from exhausting his administrative remedies, in order to cover for defendant McCray's unlawful actions.

Ⅴ RELIEF CONTINUED:

H.) Issue a declaratory judgment that the defendant, G. Arline, violated Florida Statutory Laws §§ 760.11(5); 775.085(1)(a), when he intentionally failed to follow established F.D.O.C. grievance procedures, and as a direct result violated the plaintiff's right of religious freedom, and hindered or prevented the plaintiff from exhausting his administrative remedies, in order to cover for defendant McCray's unlawful actions, due to the racial and religious differences between the plaintiff and the defendants.

I.) Issue a declaratory judgment that the defendant, A. Diaz, violated the First Amendment, U.S. Constitution; 42 U.S.C. § 2000-cc 1(a)(1)-(2); Article I, secn. 3 Florida Constitution; and statutory law § 761.03 (1)(a)(b) F.S., when she (a) refused or failed to provide the plaintiff with an `institution` pass to possess and use his Dept. authorized religious article, a Native American headband, as per an invalid institutional/regional rule or regulation, knowing that the plaintiff's religious article would be confiscated without the pass, and knowing the confiscation of the religious article would violate Dept. rules and the plaintiff's religious rights. (b) refused to authorize

Ⅴ RELIEF CONTINUED :

or obtain authorization for the plaintiff to receive a short (27") length of leather cord to replace the rotted cord on the plaintiff's medicine bag, knowing that without the cord he can not wear his medicine bag around his neck as required by the tenets of his religion, and as described in existing F.D.O.C. procedures #503.001. Defendant A. Diaz knew that her actions or inactions would prevent the proper use of the plaintiff's sacred religious article, and violate his religious rights. (c) denied the plaintiff a place and time to make his daily prayers outside of the Chapel, as required by the tenets of the plaintiff's religion, knowing that prayer is the cornerstone of the plaintiff's religion, and that denying the plaintiff the opportunity to properly pray would violate the plaintiff's religious rights. (d) denied authorization, or refused to obtain authorization, for the plaintiff to obtain, possess, and properly use two (2) small (5/16"-3/8") hoop earrings as religious articles fundamental to the plaintiff's religious beliefs, and cultural practices. Defendant Diaz knew or should have known that the denial of these religious articles would hinder and/or prevent the plaintiff's religious practice.

J.) Issue a declaratory judgment that the defendant, M. Villacorta,

- 41 -

## V RELIEF CONTINUED:

Violated the First Amendment, U.S. Constitution; 42 U.S.C. §2000-cc 1(a)(i)-(2); Article I, secn. 3 Florida Constitution; and statutory law § 761.03 (1)(a)(b), when she (a) intentionally promulgated, and caused to be enforced, a rule or regulation that singles out **only** the Native Americans religious and racial group in F.D.O.C. region #4, that improperly hinders and/or prevents the plaintiff from practicing a fundamental part of his religious beliefs. The invalid, unwritten rule or regulation requires Native Americans, only, to have an `institutional' pass authorizing the possession and use of their religious articles that have been authorized by specific F.D.O.C. since 1999. This rule or regulation resulted in the confiscation of the plaintiff's religious article by defendant McCray. Defendant Villacorta knew, or should have known this rule or regulation would **violate** the plaintiff's religious rights, and treat the Native American religion more onerously than any other in F.D.O.C. (b) failed or refused to take any corrective actions against the unlawful or improper actions or inactions of the defendants Harris, Arline, McCray, Parker, and Diaz, after being notified in writting by the plaintiff of the improper actions and their adverse effect they have upon the plaintiff's religious practice.

Ⅴ RELIEF CONTINUED:

k.) Issue a declaratory judgment that the defendant, J. McDonough, violated the First Amendment, U.S. Constitution; 42 U.S.C. §2000-cc1(a)(1)-(2); Article I, secn. 3 Florida Constitution; and statutory law § 761.03(1)(a)(b) F.S. when he (a) created and enforced, or, continued the enforcement of a previously existing rule or regulation that prohibits the plaintiff from using his statutorily changed religious name as his 'committed' name while in the F.D.O.C. (b) prohibited the plaintiff from using his statutorily changed name as his 'committed' name, thereby forcing the plaintiff to violate the tenets of his religion, that mandate its exclusive use, in order to receive needed inmate services, such as legal/routine mail, notary service, or inmate banking. (c) hindered or prevented the plaintiff's spiritual protection, growth, and development by prohibiting the plaintiff's use of his religious name as his 'committed' name.

## INJUNCTIVE RELIEF

A.) Issue an injunctive order enjoining the defendant, J. McDonough, as secretary of the Florida Dept. of Corrections, to:

(1) Authorize the plaintiff's use of his statutorily changed

<u>V</u> RELIEF CONTINUED:

name as his 'committed' name, in order to allow plaintiff's compliance with his religious requirements.

(2) Authorize the plaintiff to obtain, possess, and properly use the required religious articles he has requested (beaded headband, earrings), at all institutions, so plaintiff can can properly comply with the tenets of his religion and culture.

(3.) Authorize the plaintiff to repair/replace the leather cord on his authorized religious article (medicine bag), now and when needed in the future at all institutions, to ensure its proper use in plaintiff's religion.

(4) Authorize the plaintiff a time and place outside of the institution chapel, that would permit the plaintiff to make his daily prayers in a reasonably undisturbed manner, at all institutions.

(5.) Create a notice of authorized Native American religious property and activities, and require the signature of <u>all</u>

## V RELIEF CONTINUED:

Current and future F.D.O.C. employees as acknowledgment of the notice of basic, fundamental Native American religious practices.

(6.) Create and **enforce** a Department regulation that is regularly and routinely inspected and overseen by each regional director, that requires and ensures adequate grievance procedure forms are available when needed, and that all requests, grievances, and appeals are responded to _within_ the time frames currently established by F.D.O.C. rules in order to facilitate inmate's exhaustion of administrative remedies.

(7.) Transfer the plaintiff from `Dade´ C.I. to `Bay´ C.I., to prevent expected, and certain, retaliatory actions by the defendants in this case, and to place the plaintiff in closer proximity to tribal resources (Alabama and Florida Creek tribes), and volunteers.

## DAMAGES

## V RELIEF CONTINUED :

The plaintiff hereby respectfully requests this honorable Court to make damage awards as follows :

## COMPENSATORY DAMAGES

A) Against Named defendants, assessment of all costs and fees associated with this case.

B) Against the defendant, A. McCray, compensatory damages in the amount of fifty ($50.00) dollars, for the costs associated with the replacement of the plaintiff's religious article.

## PUNITIVE DAMAGES

C) Against the defendant, A. McCray, punitive damages in the amount of One Thousand ($1,000.00) dollars, for his individual violation of the plaintiff's constitutionally and statutorily protected right to freedom of religion.

D) Against the defendant, A. McCray, punitive damages in the amount of One Thousand ($1,000.00) dollars, for his individual violation

## V RELIEF CONTINUED:

of the plaintiff's statutorily protected right to be free from racial and religious persecution and discrimination

E) Against the defendants, Harris, Villacorta, Arline, Parker, and Diaz, punitive damages in the amount of Five Hundred ($500.⁰⁰) dollars each for their actions or inactions which resulted in, or contributed to, the violations of the plaintiff's constitutionally and statutorily protected rights.

F) Award the plaintiff nominal damages for violations recognized by the Court, or

G) Presumed damages, and

H) Such other relief as this honorable Court may recognize the plaintiff being entitled to in this action.

## DISPOSITION OF PUNITIVE DAMAGES AWARDS

The plaintiff hereby respectfully moves this honorable Court to distribute all punitive damages awards from this case to:

## Ⅴ RELIEF CONTINUED:

THE NATIVE AMERICAN RIGHTS FUND

ATTN: Director, 1506 Broadway, Boulder, Colorado 80302, (303)447-8760

Respectfully Submitted ~~Floyd EagleWolf~~
_Signature_

Floyd EagleWolf #728478
DADE C.I. - CI-117L
19000 S.W. 377 St. - Ste. 300
Florida City, Fla. 33034-6412

October 12, 2006
_Date_

## AFFIDAVIT

I, Floyd Eagle wolf, hereby swear and affirm, under penalty of perjury, that the foregoing statements of claim and fact contained in this civil rights complaint are true and correct.

~~Floyd EagleWolf~~
_Signature_

October 12, 2006
_Date_

RECEIVED

OCT 18 2006

DADE
CORRECTIONAL INSTITUTION

**INMATE REQUEST**

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

**(Instructions on Back)**

Mail Number:
Team Number: RECEIVED
Institution: WARDEN'S OFFICE

JUL 07 2006

DADE
CORRECTIONAL INSTITUTION

| TO: (Check One) | ☒ Warden  ☐ Asst. Warden | ☐ Classification  ☐ Security | ☐ Medical  ☐ Dental | ☐ Other |
|---|---|---|---|---|

| FROM: | Inmate Name | DC Number | Quarters | |
|---|---|---|---|---|
| | Robertson, Floyd | 728478 | C1-117L | I.G.  6-28-06 |

**REQUEST**     INFORMAL GRIEVANCE  W6-6-1935

On 6-27-06 at 7:06 A.M. while in line at Center gate I was confronted by C.O. Sgt. McCray regarding my authorized religious article, A leather Native American head-band. Sgt. McCray was notified the article was Authorized, religious, and that I had a pass from two previous Institutions. Sgt. McCray stated in front of several witnesses that my headband was NOT authorized and I was NOT to be seen wearing it. The Chaplain is working on getting my pass and notified Col. Churchwell at about 3:00 pm. On 6-28-06 at 6:18 A.M. C.O. Sgt. McCray again confronted me while leaving the Chowhall. He again announced my headband was NOT authorized and stated he would take it if he saw me wearing it again. C.O. Sgt. McCray walked down to several negro inmates and loudly stated "He's dumb as a rock!" This attitude and treatment evinces racial and religious prejudice as no other ethnic or religious group is required to have an institution pass for any religious article. Relief Requested: Transfer from region 4. Floyd Robertson

All requests will be handled in one of the following ways: 1) Written Information or   2) Personal Interview. All informal grievances will be responded to in writing.

---

**DO NOT WRITE BELOW THIS LINE**

**RESPONSE**                                    DATE RECEIVED:  7 / 7 / 06

Issue 1. I have advised all the shift captains and Lieutenants that your head band will not be confiscated

Issue 2   A transfer will not be warrented at this time

Considered Issue 1 approved.

Received by inmate
8(?) 3:45 P.M.

[The following pertains to informal grievances only:]
Based on the above information, your grievance is  Approved . (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Signature): _____ | Date:  7/14/06 |
|---|---|

Distribution:   White   -Returned to Inmate       Pink   -Retained by official responding, or if the response is to an
                Canary   -Returned to Inmate                informal grievance then forward to be placed in inmate's file.

DC6-236 (Revised 8-00)

**INMATE REQUEST**

WARDEN'S OFFICE

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

**(Instructions on Back)**

Mail Number: AUG 0 1 2006
Team Number:
Institution: DADE

CORRECTIONAL INSTITUTION

06-8-960

| TO: (Check One) | ☒ Warden ☐ Asst. Warden | ☐ Classification ☐ Security | ☐ Medical ☐ Dental | ☐ Other |
|---|---|---|---|---|

| FROM: | Inmate Name Robertson, Floyd | DC Number 728478 | Quarters C1-117L | Job Assignment I.S.G. | Date 7-13-06 |
|---|---|---|---|---|---|

**REQUEST**   Formal Grievance   W6-8-2009

Formal grievance to informal filed on 6-29-06 which received no timely response. Upon arrival at Dade C.I. on 6-23-06, I was notified that I had to have an 'Institution pass' to use my authorized (F.D.C. Procedure No.-503.001(3)(a)) religious article required by the tenets of my faith. I contacted Chaplain Diaz to do this. I was later confronted by C.O. Sgt. McCray, twice, in an overly aggresive and aggitated manner, who stated that without an 'Institution Pass' I could not wear my religious article and that if he saw it again he would personally confiscate it. This rule or policy at D.C.I. discriminates against Native Americans ethnicity and religion. The actions of C.O. Sgt. McCray has and continues to violate my religious rights under the First Amendment, U.S. Constitution; 42 U.S.C. §2000cc-1(a)(1)(2); Article I, secn. 3, Fla. Constitution; and Fla. statutory law, chpt. 761.03 (1)(a)(b), without lawful justification.
Relief Requested - Transfer form Region IV to facilitate the practice of my religious beliefs without fear of racial and ethnic discrimination. Floyd Robertson #728478

All requests will be handled in one of the following ways:  1) Written Information or  2) Personal Interview. All informal grievances will be responded to in writing.

**RECEIVED**

**DO NOT WRITE BELOW THIS LINE**

**RESPONSE**   Colonel,

AUG 30 2006
DADE C.I. ANNEX

DATE RECEIVED:

Sgt. McCray did not violate your rights concerning your religion. Sgt. McCray advised that he only informed you that you would stay within the policy and procedures. Based on Sgt. McCray comments I am denying your grievance at this time.

Received by plaintiff/inmate:
September 22, 2006 @ 10:06 P.M.

| [The following pertains to informal grievances only: | |
|---|---|
| Based on the above information, your grievance is _Denied_ . (Returned, Denied, or Approved).  If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.] | |
| Official (Signature) | Date: 9/6/06 |

Distribution:   White  -Returned to Inmate       Pink  -Retained by official responding, or if the response is to an
   Canary  -Returned to Inmate                   informal grievance then forward to be placed in inmate's file.

DC6-236 (Revised 8-00)

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

TO: ☒ Warden          ☐ Assistant Warden          ☐ Secretary, Florida Department of Corrections

From: Robertson, Floyd          728478          Dade C.I.
Last   First   Middle Initial          Number          Institution

Formal Part A – Inmate Grievance Grievance

Formal grievance to informal filed on 8-7-06. On 8-4-06 at about 6:15 A.M. I was confronted by C.O. Sgt. McCray at the center gate over my Native American headband, a religious article authorized by Procedure NO: 503.001(7). Sgt. McCray stated my headband was NOT authorized and ordered me to remove it. Sgt. McCray then radioed C.O. Sgt. Parker and directed him to confiscate my religious article and give me a property receipt. This was done. The actions of C.O. Sgt. McCray have violated my religious rights as provided by the First Amend. U.S. Constitution; 42 U.S.C. §2000-cc 1(a)(1)-(2); Article I, secn. 3 Fla. Constitution; and statutory law, chpt. 761.03 (1)(a)(b) F.S.

Relief Requested: In order to facilitate the religious practice(s) of my faith and Culture without racial and religious discrimination, request transfer to Region I.

Aug. 18, 2006
DATE

Floyd Robertson #728478
SIGNATURE OF GRIEVANT AND D.C. #

**\*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:_____/_____**

# _____ Signature _____

PART B – RESPONSE

Received by plaintiff/inmate:
September 22, 2006 @ 10:06 p.m.

SIGNATURE AND TYPED OR PRINTED NAME          SIGNATURE OF WARDEN, ASST. WARDEN, OR          DATE
OF EMPLOYEE RESPONDING          SECRETARY'S REPRESENTATIVE

ORIGINAL: TO BE RETURNED TO GRIEVANT AFTER COMPLETION OF ACTION.
-------- TEAR  ON  PERFORATION --------

## PART B - RESPONSE

| ROBERTSON, FLOYD | 728478 | 0608-463-162 | (463) DADE CI | C1117L |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | GRIEVANCE INSTITUTION | HOUSING LOCATION |

Your grievance was received and evaluated. It is being returned to you without processing per rule 33-103.014(1)(f) and (g), which specifies, in essence, an informal grievance should have been attached to this grievance or you should have provided what you feel is a valid reason for by-passing previous levels of review. You may correct this matter by filing an "Informal Grievance" with Mr. Churchwell, the person responsible in the area of the problem. Then, if you are not satisfied with their response, re-file your complaint using form DC1-303 and attach the informal grievance response to it for further review. Then, send both to my office for processing. Be sure to comply with the time frames outlined in rule 33-103.011. Grievance Returned.

*Received by plaintiff/inmate;*
*September 22, 2006 @ 10:06 P.M.*

| | | 9/13/06 |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

COPY DISTRIBUTION -INSTITUTION / FACILITY

(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE

(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

# DEPARTMENT OF CORRECTIONS

## Inmate Impounded Personal Property List
### (Please Print)

Inmate's Name _Robertson, FLOYD_____ Inmate Number _728478_____

Institution _Dade C.I._____ Date Property Stored _3.4.06_____

| Item | Number | Code | Item | Number | Code |
|---|---|---|---|---|---|
| Brown Head Band | 1 | C | | | |
| | | | | | |

I.  Signature of Officer(s) inventorying property:

_8.4.06_____     _M. PARKER_____ _Co'_
Date                Signature of Officer          Rank

_____       _____
Date                Signature of Officer          Rank

II.  The personal property listed above was inventoried in my presence and is a true listing of all personal property taken from me.

_____       _____
Date                Signature of Inmate      Inmate Number

III.  I have on this date received all of the above personal property marked K – Inmate allowed to keep.

_____       _____  _____
Signature of Inmate  Inmate Number    Date

_____       _____  _____
Date                Signature of Officer issuing kept property   Rank

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS
OKEECHOBEE CORRECTIONAL INSTITUTION
RELIGION DEPARTMENT

| | |
|---|---|
| MEMO TO: | **SECURITY** |
| FROM: | **Mr. T. Smith, Senior Chaplain** |
| DATE: | **January 17, 2006** |
| SUBJECT: | **Native American Guidelines (Inmate Robertson-728478)** |

**The following is a summary of the Guidelines for Native American Religious Observances.**

**State/Federal Statutes: Section 944.803, F.S., 50CFR 13 and 22**
**Florida Administrative Code: Chapter 33.503.001 and 33.602.201**

**Procedure Number: 503.001**

(8) Headbands:
    (a)   **Native American inmates may wear headbands that adhere to the description in Section (7)(b) at all times.**

    (b)   **Headbands will be made of fabric or animal skin. They may be any color. Inmates may not have beaded headbands. An inmate may paint tribal or traditional designs on his headband as part of a supervised activity. The decorated headband then must be described in the inmate's DC6-224. However, specific colors or symbols worn that associate or could associate the inmate with security threat group affiliation will be prohibited.**

    (d)   **the headband will be no wider that one (1) inch and will be no longer than the circumference of the head, allowing no more than three (3) inches on each end from the knot.**

    (e)   **An inmate in possession of a headband must have that item entered on her/his DC6-224.**

    (f)   **If an inmate violates any of the above as specified in Section (7)(a)-(7)(e), alters her/his headband in any manner, other than the supervised decoration as specified in Section (7)(b), or engages in any unauthorized activity with her/his headband, the headband will be confiscated and handled as contraband. The inmate will not be allowed to possess a headband thereafter.**

If you have any questions please feel free to contact this office at ext. 5509.

T. Smith, Senior Chaplain

TS/nl
cc:   Mr. Charles Matthews, AWP
      Mr. Jay Blackwood, OIC
      File

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

**HENDRY CORRECTIONAL INSTITUTION**

MEMO TO:     Robertson, Floyd, 728478

FROM:         Chaplain R. Wiedeman

DATE:         MAY 23, 2006

SUBJECT:     **Devotional Items**

You are authorized to possess one headband, one inch thick, one medicine bag, and one prayer feather.


*Chaplain Wiedeman*
Robert E. Wiedeman, Chaplain

# INMATE REQUEST

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

*(Instructions on Back)*

Mail Number: _____
Team Number: _____
Institution: _____

**TO:** (Check One)   ☐ Warden   ☐ Classification   ☐ Medical   ☐ Other  *09-63*
                      ☐ Asst. Warden   ☒ Security   ☐ Dental

| FROM: | Inmate Name | DC Number | Quarters | Job Assignment | Date |
|---|---|---|---|---|---|
| | Robertson, Floyd | 728478 | F1-215U | HSMW. | 9-13-05 |

~~**REQUEST**~~   *INFORMAL GRIEVANCE*

Grievance pursuant to 42 U.S.C. §1997e. The Dept. of Corrections and this institution is hindering my religious practice by preventing me from using my religious name in the prison system. My legal name was not put on my I.d. Card, nor was my race correct. I presented court documents at S.F.R.C. showing my legal name change from before I came into D.O.C. Nothing has been done to correct this problem. This also prevents or hinders my access to services obtained by using the I.d. Card (canteen, notary, Banking), and my incoming and outgoing mail. The Dept. and institution are denying my Native American identity and recognizing only the former non-native name to frustrate my religious practice.

Relief Sought: Inmate seeks to have his legal religious name changed on his I.d. Card, as well as his race, and have ~~the~~ the name currently used as his committed name filed as the A.K.A. identifier.   *Floyd Robertson* #728478

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

---

**DO NOT WRITE BELOW THIS LINE**

## RESPONSE

DATE RECEIVED: _____

*See Attached Response*

[The following pertains to informal grievances only:]

Based on the above information, your grievance is _____ . (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

Official (Signature): _____   Date: 9-22-05

Distribution:   White   -Returned to Inmate        Pink   -Retained by official responding, or if the response is to an
               Canary  -Returned to Inmate                informal grievance then forward to be placed in inmate's file.

DC6-236 (Revised 8-00)

*04-63*

Received:   9/19/05

Pursuant to Chapter 33-601.101 1 a:   "**33-603.101 Use of Committed Name**

(1)(a) In order to avoid conflicts in mailing and visiting privileges, as well as to assist inmates in making bank and canteen transactions and ensure timely delivery of legal documents, and to provide staff with a consistent means of inmate identification for security and daily institutional operation purposes, each inmate shall be recognized by the department under the name on the initial commitment under which the inmate was received. The committed name shall be obtained from the information or indictment page of the commitment package, not from the uniform commitment to custody cover sheet. For multiple cases imposed on the same date, the committed name is the name listed on the earliest chronological case. This name shall be the inmate's official identification throughout the continuous incarceration of the inmate on that sentence or combined sentences and must be included on any official document sent or received by the inmate.

Pursuant to 33-503.001 2a:   "It is the policy of the Department to extend to all inmates the greatest amount of freedom and opportunity for pursuing individual religious beliefs and practices consistent with the security and good order of the institution.

Your legal name has absolutely nothing to do with your religious preference.   You are responsible for advising the Chaplain of  your religious preference.

Based on the aforementioned, your grievance is denied.

If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006 F.A.C.

Official Signature: *M. Michael Cew*    Date: *9-22-05*

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

TO: ☒ Warden       ☐ Assistant Warden       ☐ Secretary, Florida Department of Corrections

From: Robertson, Floyd  T.          728478          Okeechobee C.I.
___Last___ __First__ _Middle Initial_          __Number__          __Institution__
                                                                    0504 664-128

### Part A – Inmate Grievance

Formal Grievance to informal of 9-13-05. The institution's response is incorrect. My religious PRACTICE has everything to do with the use of my religious name. Further, the chaplain is aware of my racial and religious identity. The Dept's refusal to allow me to use my religious name severely hinders my religious practice and violates my right to religious freedom. Additionally, on August 4, 2000 the Dept. was Court ordered to implement a dual-name policy by adding a legal (statutory) religious name to an inmate's identification card upon notification and proof of change. The policy has to permit inmate to obtain all prison services. Hakim V. Hicks, 223 F.3d 1244 (11th cir. 2000)(refusal to follow dual-name policy on ID. Card & Services violated religious freedom). RELIEF SOUGHT: For inmate's religious name to be placed on ID. Card and Dept. files, and current name to be used as F/K/A identifier with number.

September 28, 2005                    Floyd Robertson  #728478
_____DATE_____                   SIGNATURE OF GRIEVANT AND D.C. #

**\*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:** ___/_____

|  # | Signature |
|----|-----------|

### PART B – RESPONSE

*See attached response*

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |
|---|---|---|

ORIGINAL: TO BE RETURNED TO GRIEVANT AFTER COMPLETION OF ACTION.

**PART B - RESPONSE**

| ROBERTSON, FLOYD | 728478 | 0509-404-128 | (404) OKEECHOBEE C.I. | F1215U |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | GRIEVANCE INSTITUTION | HOUSING LOCATION |

Grievance Log #0509-404-128
Received 10/03/2005

Your request for Administrative Remedy or Appeal has been received, evaluated, and the following determined:

Pursuant to Chapter 33-601.101 1 a;   "33-603.101 Use of Committed Name"
(1) ( a ) In order to avoid conflicts in mailing and visiting privileges, as well as to assist inmates in making bank and canteen transactions and ensure timely delivery of legal documents, and to provide staff with a consistent means of inmate identification for security and daily institutional operation purposes, each inmate shall be recognized by the department under the name on the initial commitment under which the inmate was received.  The committed anme shall be obtained from the information or indictment page of the commitment package, not from the uniform commitment to custody cover sheet.  For multiple cases imposed on the same date, the committed name is the name listed on the earliest chronological case.  This name shall be the inmate' ' s official identification throughout the continuous incarceration of the inmate on that sentence or combined sentences and must be included on any official document sent or received by the inmate.

Pursuant to 33-503.001 2a:     "It is the policy of the Department to extend to all inmates the greatest amount of freedom and opportunity for pursuing individual religious beliefs and practices consistent with the security and good order of the institution.

Your legal name has absolutely nothing to do with your religious preference.  You are responsible for advising the Chaplain of your religious preference.

Based on the aforementioned, your grievance is DENIED.

You may obtain further review of your complaint by obtaining form DC1-301, Request for Administrative Remedy or Appeal, completing the form, providing attachments as required by Chapter 33-103.007, and forwarding it to the Bureau of Inmate Grievance Appeals, 2601 Blair Stone Road, Tallahassee, FL  32399-2500.

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |
|---|---|---|

GTheobald, SCO

1 4 OCT 2005

COPY DISTRIBUTION -INSTITUTION / FACILITY
(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

TO: ☒ Warden    ☐ Assistant Warden    ☐ Secretary, Florida Department of Corrections

From: Robertson, Floyd          728478          Okeechobee C.I.
       Last    First   Middle Initial      Number           Institution

                                                      0510-404-067

---

Part A – Inmate Grievance

Formal grievance to informal #09-63 (9-13-05). In as much as my informal grievance was not returned, I am refiling this Formal grievance on religious name change. The response received by inter-office memo, of 10-10-05, wherein Ms. P. Crews recites Dept. policy ignores, or fails to note, the fact that the name change took place over a year prior to my arrival in the F.D.O.C. on July 27, 2005. This is NOT a case of an inmate changing his name after commitment. Florida statute 368.07(5) directs the Clerk of the Court to notify the Fla. Dept. of Law Enforcement, F.B.I., and any other interested law enforcement agency of the name change. (That includes the F.D.O.C.). The fact that I was incarcerated, but awaiting trial, was made known to the Court through the petition for name change and a telephonic hearing to Hon. Judge Shapiro. It would seem the F.D.O.C. would be first to be notified. This is a clerical error, not inmate error. The 11th Circuit Court of Appeals in 'Hakim v. Hicks', directed the F.D.O.C. to implement a 'dual name' policy that permits inmates, with religiously changed name, to receive all prison services (mail, notary, canteen, etc.) under that policy. Finally, if the institution insists on ignoring the Fed. Court's order, then it should look to it's own rule on the subject, F.A.C. rule 33-603.101(6)1,2. The refusal of the institution to allow me the use of my religious (and legal) name, unnecessarilly hinders an integral part of my religious and cultural belief and practice. The rule violates my right to religious freedom guaranteed by the U.S. and Florida Constitutions. If the institution can not correct this problem, it will be brought back before the same Court who will, I'm sure, thouroughly explain it's order to the institution and Department.

Belief Requested: Implementation of 'dual name' policy, as directed by Court order and F.A.C. rule, that allows receipt of all prison services, or Transfer inmate to another region more observant of religious freedom(s).

October 14, 2005                              Floyd Robertson #728478
       DATE                              SIGNATURE OF GRIEVANT AND D.C. #

---

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS: _____ / _____

60                                                      #        Signature

**PART B - RESPONSE**

| ROBERTSON, FLOYD | 728478 | 0510-404-067 | (404) OKEECHOBEE C.I. | F2112U |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | GRIEVANCE INSTITUTION | HOUSING LOCATION |

Your Request for Administrative Remedy or Appeal has been received, evaluated and the following determined:

Review reveals that you have filed grievance # 0509-404-128 for the same or similar issue(s). This is a violation of the grievance rule in accordance with FAC Chapter 33-103.014(q).

A review of the informal log reveals grievance #09-63 for the same or similar issue was responded to within the allotted time frame according to policy.

Therefore your grievance is denied and is being RETURNED to you without action.

| Geri Theobald Wong CS | | |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE 10-21-5 |

Geri Theobald

**2 5 OCT 2005**

COPY DISTRIBUTION - INSTITUTION / FACILITY
(2 Copies) Inmate
(1 Copy) Inmate's File
(1 Copy) Retained by Official Responding

COPY DISTRIBUTION - CENTRAL OFFICE
(1 Copy) Inmate
(1 Copy) Inmate's File - Inst./Facility
(1 Copy) C.O. Inmate File
(1 Copy) Retained by Official Responding

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

RECEIVED
OCT 21 2005
Department of Corrections
Inmate Grievances

TO: ☐ Warden    ☐ Assistant Warden    ☒ Secretary, Florida Department of Corrections

From:  Robertson, Floyd          728478          Okeechobee C.I.
       Last   First   Middle Initial      Number              Institution

| | Part A – Inmate Grievance | 05-6-29684 |

Appeal to informal and formal grievances, attached. The responses received at the institutional level are unimaginative and ignore, or fail to note; the fact that the name change took place over a year prior to my arrival in the F.D.O.C. on July 27, 2005. In addition, Fla. Statute 868.07(5) clearly directs the Clerk of the Court to notify the F.D.L.E., F.B.I. and any other interested law enforcement agency (including F.D.O.C.) of the name change. Indeed, considering that my "petition for name change" clearly indicated I was incarcerated awaiting trial, and a telephonic hearing with Hon. Judge Shapiro (Civil Court 11th Jud. Cir.) reiterated my status, it seems the Clerk would have notified the F.D.O.C. first. Clerical error :: NOT inmate. The Eleventh Cir. Court of appeals in the case "Hakim V. Hicks" (Aug. 4, 2000) directed the F.D.O.C. to implement a "dual-name" policy that permits inmate with legal (statutory) religious name change to receive all prison services (canteen, incoming + outgoing mail, notary, etc.) under the policy. Finally, if the institution/Dept. wishes to ignore the Federal Court's decision/order, then perhaps it should look to it's own F.A.C. rule, chpt. 33-603.101(C) 1 and 2, on the subject of "legal religious names". The refusal of the institution/Dept. to implement a dual-name policy to permit the use of my legal religious name in prison unnecessarily hinders and burdens an integral part of my traditional religious beliefs and practice, along with my cultural practices. This rule, regulation, policy, or procedure violates my right of religious freedom a provided by the U.S. an Florida Constitutions, and Fla. Statutes. If the institution can not correct this problem, it will be brought back before the same Court who will, I'm certain, thouroughly clarify it's order to both the institution and Dept.

SEE ATTACHED RESPONSE

Relief Requested: To have my legal religious name put on my F.D.O.C. I.D. Card, and to receive all prison services under a dual-name policy; or transfer to another region.

October 17, 2005          Floyd Robertson #728478
DATE                      SIGNATURE OF GRIEVANT AND D.C. #

**\*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:** _____ / _____

# _____    Signature

INSTRUCTIONS

**PART B - RESPONSE**

| ROBERTSON, FLOYD | 728478 | 05-6-29684 | (404) OKEECHOBEE C.I. | F2112U |
|---|---|---|---|---|
| INMATE | NUMBER | GRIEVANCE LOG NUMBER | GRIEVANCE INSTITUTION | HOUSING LOCATION |

Your request for administrative review has been received, reviewed, and evaluated.

The inmate may have his legal religious name affixed to the reverse side of his identification card if the proper procedures are followed.  However, a legal religious name change does not require that the department alter official records and the inmate's committed name shall be used for all department business.  This is in keeping F.A. C. 33-603.101 (1) (c) 1, 2, and 3.

The institution replied appropriately, thus, until proper procedures are followed, the appeal for a legal religious name to be affixed to the reverse side of the inmate's identification card is denied.  And any request to have the inmate's committed name changed to an AKA identifier is denied.

Based on the foregoing information, your appeal is denied.


C. J. GREENE

_____    _____    11/17/05
SIGNATURE AND TYPED OR PRINTED NAME          SIGNATURE OF WARDEN, ASST. WARDEN, OR          DATE
OF EMPLOYEE RESPONDING                                  SECRETARY'S REPRESENTATIVE


COPY DISTRIBUTION -INSTITUTION / FACILITY

(2 Copies) Inmate

(1 Copy) Inmate's File

(1 Copy) Retained by Official Responding


COPY DISTRIBUTION - CENTRAL OFFICE

(1 Copy) Inmate

(1 Copy) Inmate's File - Inst./Facility

(1 Copy) C.O. Inmate File

(1 Copy) Retained by Official Responding